

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 21, 2023

**BY ECF**
Hon. Naomi Reice Buchwald
United States District Court
500 Pearl Street
New York, NY 10007

    Re:    <u>United States</u> v. <u>Jeriel Delosangeles</u>, 22 Cr. 253 (NRB)

Dear Judge Buchwald:

    The Government respectfully submits this letter in advance of the March 28, 2023 sentencing of the defendant, Jeriel Delosangeles, who pled guilty to participating in a conspiracy to transport cocaine into the New York City area from Puerto Rico. The parties and the Probation Office agree that the applicable sentencing range is 108 to 135 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment. The Government respectfully submits that a sentence at the bottom of the applicable Guidelines range is appropriate in light of the defendant's extensive involvement in this criminal conspiracy after multiple prior convictions.

## I. Background

### A. Offense Conduct

    From June 2021 through April 2022, the defendant worked with his co-defendant, Frederick Duarte, and others, as part of a scheme to ship cocaine into the New York City area from Puerto Rico. PSR ¶ 8. The conspiracy generally worked in three steps: First, co-conspirators in Puerto Rico mailed cocaine to addresses in the Bronx and Yonkers, using the United States Postal Service ("USPS") and FedEx. *Id.* ¶ 9. Duarte was a FedEx driver, and other co-conspirators were USPS drivers, so the addresses to which the cocaine was shipped typically corresponded with addresses on their routes. *Id.* Second, either Duarte or the defendant would pick up the package and bring it to Duarte's apartment, where they removed the cocaine. *Id.* And third, Duarte and the defendant would deliver the cocaine to other drug dealers, often by having those dealers meet them in the vicinity of Duarte's apartment. *Id.*

    As packages were en route from Puerto Rico to New York, Duarte and the defendant tracked them using the USPS or FedEx website and other tracking devices. *Id.* ¶ 10. Law enforcement officers seized eight packages—containing over 18 kilograms of cocaine—that either Duarte or the defendant tracked. *Id.* For example, on February 16, 2022, law enforcement officers seized two parcels, each of which contained approximately two kilograms of cocaine. *Id.* Each package also contained an Apple AirTag—a location-tracking manufactured by Apple—linked to

the defendant's phone number. *Id.* The defendant also tracked both packages through the USPS website. *Id.*

The eighteen kilograms that law enforcement seized was only a portion of the narcotics that the defendant was involved in importing. On multiple occasions between December 2021 and April 2022, law enforcement officers observed the defendant and Duarte bring packages into Duarte's apartment that were of similar size and shape to those in which the officers found narcotics. *Id.* ¶ 11. Officers also saw the defendant and Duarte bring packages to cars that parked near Duarte's apartment, consistent with delivering cocaine to dealers. *Id.* And officers recovered trash bags disposed from Duarte's apartment that contained narcotics-packaging materials and had cocaine residue. *Id.* After the defendant's arrest, law enforcement also obtained a warrant to search two of the defendants' cellphones and found multiple photographs of what appeared to be kilograms of narcotics.

### B. Procedural History

On May 3, 2022, a grand jury in the Southern District of New York returned an indictment (the "Indictment") charging the defendant and Duarte with conspiring to distribute over five kilograms of cocaine, in violation of Title 21, United States Code, Section 846. The defendant was arrested a week later, on May 10, 2022, and was ordered detained pending trial. He has remained in custody since his arrest.

On November 29, 2022, the defendant pled guilty, pursuant to a plea agreement, to the lesser included offense of conspiring to distribute more than 500 grams of cocaine, in violation of Title 21, United States Code, Section 846. *Id.* ¶ 4. In the plea agreement, the parties agreed that the defendant was responsible for distributing approximately 18 kilograms of cocaine, resulting in an offense level, after acceptance of responsibility, of 29. The parties also agreed that the defendant is in Criminal History Category III, resulting in an applicable Guidelines range (the "Stipulated Guidelines Range") of 108 to 135 months' imprisonment. *Id.* The Probation Office concurs with that calculation. *Id.* ¶ 64.

## II. Discussion

### A. Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of

sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7).  *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.  The Court Should Impose a Sentence At The Bottom of the Stipulated Guidelines Range

The Government respectfully submits that the Court should impose a sentence at the bottom of the Stipulated Guidelines Range of 108 to 135 months' imprisonment.  Such a sentence appropriately reflects the severity of the defendant's crime and his criminal history, while accounting for his struggles with addiction.

For nearly a year, the defendant and his co-conspirators shipped large quantities of a deadly and highly addictive substance into the New York City area.  The Government seized over 18 kilograms of cocaine from that conspiracy, but the actual scope of the crime is considerably larger.  By its very nature, the full scope of the cocaine-trafficking operation was difficult to track: co-conspirators mailed packages from different locations in Puerto Rico, to a wide array of addresses across the Bronx, Yonkers, and other areas, making it difficult to distinguish the contraband packages from ordinary mail.  Law enforcement officers seized only the subset of packages that they could identify as being tracked by Duarte or the defendant and seize before it reached its intended destination.  The evidence is clear that this was only a fraction of the total package, as illustrated by the fact that surveillance and data from the defendant's cellphone confirmed that the defendant and Duarte were receiving and distributing cocaine notwithstanding law enforcement's interdiction efforts.

The defendant, moreover, was not a minor participant in the scheme.  He regularly participated in the conspiracy for months and was involved in all of the major steps that took place in New York.  He tracked packages.  He brought packages to Duarte's apartment.  He took part in unpacking cocaine.  And he delivered drugs to dealers who stopped in the vicinity of Duarte's building.  That is strong evidence that the defendant knew that he was involved in an operation

that was moving large quantities of narcotics, and doing so through corrupt USPS and FedEx employees, who were misusing their positions to facilitate the drug-trafficking operation.

Standing alone, the defendant's deep involvement in such a significant crime warrants a serious term of imprisonment. But the conduct is particularly concerning in light of the defendant's multiple prior convictions. Between 2012 and 2014, the defendant was arrested three times for different credit-card fraud schemes. The first two arrested resulted in state convictions for credit-card fraud, with sentences of probation and one day in prison. *Id.* ¶¶ 30-31. But the third arrest, which involved the defendant being caught with 62 counterfeit credit cards and a fraudulent driver's license, resulted in a federal access-device fraud conviction and a sentence of 15 months' imprisonment. *Id.* ¶ 32. Those crimes are, of course, not similar to the instant offense. But they are nonetheless significant because they show that, rather than learning from his prior run-ins with the criminal justice system, the defendant has instead engaged in an even more serious crime, highlighting the need for a significant sentence to deter him from reoffending in the future.

To be sure, the Government acknowledges that the defendant has reported a history of alcohol and cocaine abuse and credits his acknowledgment that he needs treatment. But because of the defendant's prior criminal history, including his prior federal prison sentence, the Government believes those mitigating factors warrant a sentence at the bottom of, rather than below, the Stipulated Guidelines Range.

**III. Conclusion**

For these reasons, the Government respectfully submits that the Court should impose a sentence at the bottom of the Stipulated Guidelines Range of 108 to 135 months' imprisonment, but no lower than the 60 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __*/s/ Thomas Burnett*_____
Thomas S. Burnett
Assistant United States Attorney
(212) 637-1064